HUGH J. ROGAN, RESPONDENT, *v.* MONTANA CENTRAL RAILWAY COMPANY, APPELLANT.

[Submitted November 19, 1897. Decided February 28, 1898.]

*Compromise and Settlement—Personal Injury—Damages.*

1. COMPROMISE AND SETTLEMENT.—While plaintiff was riding train of defendant, several of the cars including the one occupied by defendant became detached from the others and ran away; plaintiff was thrown against the side of the car and injured, but set the breaks and stopped the train; he wrote for a pass, "as a recompense for

stopping" the cars, and "for labor" rendered the company; the defendant's superintendent in reply thanked the plaintiff for his "services," and wrote across plaintiff's letter a direction to issue the pass on account "of services rendered; account, stopping train broken in two." *Held,* that the lower court did not err, to prejudice, in submitting to the jury the question of whether or not plaintiff accepted the pass as full settlement of his claim for damages.

2. PERSONAL INJURY—*Damages.*—Where the evidence shows that plaintiff by reason of the injuries he had received from defendant's negligence would be permanently prevented from superintending and giving his personal attention to his business as a ranchman and farmer, as he had done before, that his services were worth $100 per month, it was no error to charge the jury that the amount of which he might recover was a matter to be left to the sound discretion of the jury under the evidence.

*Appeal from District Court, Lewis and Clarke County. H. N. Blake, Judge.*

ACTION by Hugh J. Rogan against the Montana Central Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Statement of the case by the justice delivering the opinion.

Action to recover $10,000, damages for personal injuries sustained by plaintiff and respondent while traveling as a passenger upon one of the cabooses of defendant and appellant railroad, between Craig, and Helena, Mont. The respondent recovered a verdict for $1,000. Appellant appeals to this court from the judgment and an order overruling a motion for a new trial. The evidence of the respondent was, very briefly stated, to the effect that upon the night of March 9, 1895, he got into a caboose attached to a freight train, and was coming from Craig to Helena; that he was sleeping on the seat of the caboose, when he was suddenly thrown violently to the floor; that in getting up he was again thrown to the side of the car, and had difficulty to keep his feet; that he realized then that the train had parted, and the part he was in was running away down grade towards Prickly Pear Canyon; that he was thrown on the edge of a box in the car, and against a bucket, hitting his chest upon the bucket, which caused him a great deal of pain; that he finally got out of the caboose, and set six brakes upon the runaway cars, which were going at a tremendous rate of speed, and finally stopped the train after it had run about 15 or 20 miles. Respondent

said he was in bed for three or four days after the accident and was terribly sick; that the injury to his breast was the worst, and continued to hurt him from the time of the accident up to the time of the trial; that both his legs and shoulders were skinned, and his arms and shoulders were black and blue; his head was bruised, and his back was hurt; he did not sleep well for some time after the accident; had plasters put upon his body, and for three weeks after he was injured could not lift anything without suffering pain; his legs were also affected so that he could not swing his foot or move as freely as he had been accustomed to. In relation to the permanent injuries, respondent said that he could not do any heavy work at all; that the pain in his breast prevented his lifting anything; that he was affected by changes in the weather; that his appetite was not as good as before the accident; that he did not sleep as well as he did before he was hurt; that he had not been able to perform half of his duties since the accident, by reason of the pain in the breast; that he never had suffered from such pains before he was injured. He also testified that he was a ranchman, and managed his fruit, vegetable and nursery ranch of 212 acres; that he did most of the principal work in nursing shade trees and strawberries and looking after the dairy department and vegetables on the ranch; that he employed two men; that he considered his time worth $100 a month before his injuries, and that it was as necessary for the duties which he had performed to be done after he was hurt as before; and that when he tried to do work he became exhausted by the pains in the breast, and had to go to the house. Upon cross-examination appellant sought to prove that the respondent had asked for and received a pass from the superintendent of the road for all damages that he might have suffered in the accident referred to. Certain letters were introduced wherein the respondent notified the superintendent of the appellant railroad of how he had stopped the runaway cars, and how he had saved the company from great damage by preventing the destruction of freight, the burning of cars, and in preventing the road from being advertised in a way

which "would have been detrimental to it." The "reward" asked was a time pass. To this letter the superintendent replied to the effect that the respondent's letter was received requesting a time pass "as a recompense for stopping some cars that started down hill from Silver." The company declined to issue a time pass, but did offer to respondent a round-trip pass to any point between Butte and Havre. In closing the letter referred to, the superintendent thanked plaintiff for his "services." After the receipt of this letter, the respondent notified the superintendent that he did not think a round-trip ticket was a reasonable compensation for the "labor" rendered the company, but stated that he would be glad to have a pass to Great Falls from Helena and return. Across this letter was a notation by the company's representatives to issue a round-trip pass on account of "services rendered; account, stopping train broken in two at Silver." Subsequently respondent told the superintendent that he considered himself recompensed by the pass issued to him for the services rendered, but that he had been injured, and desired a settlement on that account. The superintendent, although he promised to write to the respondent in relation to his claim for injuries received, did not do so. Respondent then brought suit. A physician testified in respondent's behalf that respondent was suffering from an injury about the pectoral muscle on the left side; that he considered the injury reasonably likely to be permanent, and to increase with age; that the left side of the breast was sensitive; and that such an injury prevents a man from working, for, if he works, he is apt to suffer a great deal, because the particular muscle injured is one needed very much in working, the arm depending largely upon it. The appellant offered no testimony beyond the fact that Mr. McLaren was no longer the superintendent of its railway, and was out of the state at the time of the trial.

*A. J. Shores*, for Appellant.

*R. R. Purcell* and *George M. Bourquinn*, for Respondent.

Hunt, J.—The first assignment of error is based upon the insufficiency of the evidence to justify the verdict. This is founded upon the argument that the evidence discloses that Rogan accepted the pass given to him as full compensation for damages sustained as well as for services rendered. We cannot take this view of the testimony. Respondent only asked for a reward for performing certain services, the items of which he enumerated in his letter. Evidently the appellant so understood his request, for its superintendent replied by thanking respondent for his ''services,'' saying he had received respondent's letter requesting a pass ''as a recompense for stopping some cars that started down hill from Silver.'' Respondent thereafter wrote that he would take a pass as compensation for ''labor'' performed, and it was accordingly issued to him on account of ''services rendered'' in stopping the runaway train. A careful study of the correspondence between the respondent and appellant satisfies us there is nothing to warrant the court in holding that the lower court erred to appellant's prejudice in submitting to the jury the question of whether or not the respondent accepted the pass given as a full acquittance of every claim he had against the appellant company. It rather looks as if both parties had construed the claim in like manner, as one for services performed. At all events, the issue was one for the jury to pass upon, and, as there is ample evidence to support their verdict, we cannot disturb it.

We therefore pass to the instruction complained of. This was as follows: ''If you are satisfied by the preponderance of the evidence that the plaintiff received any of the injuries through the causes specified in the complaint, you will find for the plaintiff for damages in such sum as will compensate him for the injuries, if any, he has sustained, not exceeding, however, the sum of $10,100. The elements entering into damages are the following: (1) Such as will compensate him for the expense, if any, he has paid or incurred for care and medical attendance in consequence of such injuries, not exceeding the sum of $100. (2) If you are satisfied by a preponder-

ance of the evidence that such injuries have impaired the plaintiff's power to earn money in the future, such sum as will compensate him for such loss of power. (3) Such reasonable sum as will compensate him on account of the pain and anguish he has suffered by reason of such injuries. (4) Such sum as will compensate him for time lost, if any, through any of said injuries. The first of these elements is the subject of direct proof, and is to be determined by the jury on the evidence they have before them. The second, third, and fourth elements are, from necessity, left to the sound discretion of the jury under the evidence.''

The appellant urges that it was erroneous to leave the amount of compensation for time lost to the ''sound discretion of the jury, under the evidence.'' The question of what amount of damages may be awarded for time lost in certain cases often becomes very difficult, owing to the nature and extent of the business of the person who seeks a recovery. Take the case before us for an example. Respondent is a ranchman, making his living by selling shade trees, small fruits, vegetables, and dairy products. He lays out the work, oversees his farm and the labor thereof, and otherwise gives his personal attention to such details as go to make his ranch business successful, and which, if not carefully watched, would result in a serious loss to the proprietor or owner. Now, if the person who was injured had been at the time of the injury an employe of respondent, the matter of compensation would be easily inquired into, for the value of his labor in wages as a farm hand would be the standard by which time lost could be readily ascertained. But here the earnings depended largely upon the individual abilities of the respondent, and it was impracticable to accurately measure the value of his services by any general pecuniary scale of remuneration. He offered his own estimate of the value of his time, placing it at $100 per month. This testimony was not objected to by appellant on the trial, and went to the jury as evidence under which they were directed to consider the element of damages for lost time, if they found respondent was injured by reason of the acts of

appellant company.   Of course, the jury were not bound by the amount at which the respondent valued his services, as a necessary and legal measure of damages, and it may be they awarded respondent nothing under this particular head; but, with the evidence before them, it was proper for them to consider it and give it such weight as, "in the exercise of good sense and sound discretion," they thought it entitled to. (Sedgwick on Damages, § 180; *N. J. Express Co.* v. *Nichols*, 33 N. J. Law 434.)   The judgment of the jury, under the evidence, was the proper way to arrive at just compensation, if the issues were found for the respondent.   *(Loewer* v. *City of Sedalia*, 77 Mo. 431; *Feinstein* v. *Jacobs* (City Ct. N. Y.) 37 N. Y. Sup. 345; Sutherland on Damages, § 1249.)

Nor can we say that the instruction was prejudicial to appellant's rights because it impliedly told the jury that any compensation allowed to respondent for lost time was not the subject of direct proof, but was, of necessity, left to their sound discretion.   The jury were to award such damages, under the evidence, as in their judgment seemed proper.   The evidence admitted, which we treat as competent, merely disclosed the somewhat peculiar nature and extent of respondent's duties, which could not be remunerated by any fixed standard, together with respondent's estimate or opinion valuation of his own services.   Inasmuch as the jury were not bound by this opinion, it follows that their finding must have been based upon certain inferences and common knowledge, rather than upon purely direct evidence, which proved the fact of an exact value of respondent's time without any inference.   As said before, there was no way, under the circumstances of this case, of exactly measuring the value of respondent's time lost.   It was a fact to be established by proving other facts.   Included among these other facts were the nature of his duties, his position, his injuries and the time he lost, and, perhaps, opinions of the value of the services.   All such other facts, when proven, tended to establish the fact that respondent's time was worth something, and, although this latter fact was true, it still did not conclusively establish

what amount his services were worth, yet did afford an inference that it was worth a reasonable amount, which was necessarily to be found by the jury in the exercise of their best judgment. Thus, when analyzed, the court did not err in charging that the value of the respondent's time was to be arrived at by the exercise of the jury's best judgment, under the evidence before them. Upon the whole case, we find no error, and must affirm the judgment.

*Affirmed.*

PEMBERTON, C. J., and PIGOTT, J., concur.